2021 IL App (2d) 200178-U
No. 2-20-0178
Order filed October 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-204 |
| TAVARES SANDERS, | ) ) | Honorable Charles E. Petersen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Bridges and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant was properly convicted of aggravated domestic battery based on the victim's prior inconsistent statements and corroborating evidence of her injuries and medical treatment; the fact that the dates specified in the prior statements did not correspond precisely with the offense dates alleged in the indictment was not fatal.

¶ 2    Following a bench trial, defendant, Tavares Sanders, was found guilty of three counts of aggravated domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2); 12-3.3(a) (West 2016)) and sentenced to six years' imprisonment. He appeals, contending that he was not proved guilty beyond a reasonable doubt. Defendant argues that (1) the only direct evidence of his guilt was the

alleged victim's prior inconsistent statements, which she authenticated at trial, and (2) those statements and the corroborating evidence failed to prove with certainty that an offense occurred on the dates alleged in the indictment. We affirm.

¶ 3                                                I. BACKGROUND

¶ 4       Defendant was charged with three counts of aggravated domestic battery. Each count alleged that, on or about January 25 or 26, 2017, defendant struck Fredricka Quinn on or about the body.

¶ 5       At trial, Quinn testified that she and defendant were married and had three children together. In January 2017, they were currently separated. She could not recall if, in January 2017, defendant had any unwanted physical contact with her, she had contact with the police, or she had gone to the hospital. Quinn was shown People's exhibit No. 23, which was a handwritten statement on a form titled "Aurora Police Department Sworn Statement" (handwritten statement). Quinn noted that the handwritten statement was dated February 1, 2017. She identified her signature on the statement but could not recall writing the body of the statement.

¶ 6       Quinn testified that she obtained several orders of protection in Cook and Kane counties but could not recall any of the dates on which she obtained the orders. She was shown People's exhibit No. 24, which was a verified petition for an order of protection dated February 3, 2017 (verified petition). She claimed that she did not recall seeing the verified petition before. However, she identified her signature on the verified petition. The trial court allowed the verified petition into evidence without objection from the defense.

¶ 7       The State also showed Quinn some text messages from her phone, but she could not say who sent them. Quinn testified that she cared about defendant as he was her children's father, and she did not want anything bad to happen to him.

¶ 8    Aurora police officer Patricia Vega testified that she responded to a call on February 1, 2017, regarding a domestic battery involving Quinn. She noted that Quinn had taped lacerations on her forehead. She took photos of Quinn and some text messages on her cell phone. She testified that Quinn wrote out a statement. Vega identified the handwritten statement as the statement Quinn wrote on February 1, 2017. The court admitted the handwritten statement into evidence over defendant's objection.

¶ 9    The trial court admitted the handwritten statement and the verified petition as substantive evidence under 115-10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1 (West 2018)). The handwritten statement reflected that Quinn's police interview on February 1, 2017, was a "true and accurate account" of events on January 26, 2017. Quinn wrote that, on January 26, 2017, defendant visited her home. When she left to run an errand, he pretended to leave as well. However, he hid himself in the children's room. Quinn was on the phone in her room when defendant ran in and started hitting and punching her. Defendant said, "Oh you on the phone with a guy." When Quinn started hitting back, defendant pushed her head into a wall, leaving a hole in the wall. He also punched her in the eye, leaving it black and red. When Quinn threatened to call the police, defendant ran out of the house. She pursued him outside, complaining about her eye. Defendant then punched her in the forehead and threw her down on the cement. When she stood up, she noticed that blood was dripping from her face.

¶ 10   The verified petition contained similar allegations. It stated that, "[o]n or about February 1, 2017," Quinn was in her room on the phone when defendant jumped out of the children's closet and said, " 'Oh you on the phone with another guy.' " He began hitting Quinn's legs and upper body. When Quinn asked defendant why he hit her, he pushed her head into a wall, causing a hole. Quinn began to fight back, and defendant punched her in the eye, causing it to swell. When Quinn

yelled that she was calling the police, defendant ran out of the building. Quinn followed and told defendant that he had given her a black eye. Defendant apologized, saying that he did not mean to hit her in the face and was aiming only for the lower body. Quinn again threatened to call the police. Defendant punched her in the forehead, grabbed her by the shoulders, and threw her down on the cement. When she rose, she noticed blood dripping from her head.

¶ 11    Laura Shea, an emergency room nurse at Rush Copley Medical Center, testified that she was working in that capacity on January 19, 2017. She had no independent recollection of the patients she saw during her shift that day. After reviewing medical records in court, Shea testified that Quinn received emergency room treatment on January 19, 2017, which included: (1) a CT scan, which was standard procedure for someone who falls or is hit on the head; a finger X-ray; (3) applying Steri-Strips to a laceration above her left eye; and (4) being given ibuprofen and a tetanus shot. On cross-examination, Shea testified that Quinn never identified the person who hit her.

¶ 12    The trial court found defendant guilty on all three counts. The court found that counts II and III merged into count I, and the court sentenced defendant to six years' imprisonment. Defendant timely appeals.

¶ 13                            II. ANALYSIS

¶ 14    Defendant contends that he was not proven guilty beyond a reasonable doubt of committing aggravated domestic battery on the dates alleged in the indictment. He argues that the only direct evidence of his guilt was Quinn's prior statements, which she could not remember making and alleged different dates—January 26 and February 1, 2017—for the offense. Defendant recognizes that the State attempted to produce corroboration through photos of Quinn's injuries and Shea's

testimony about treating Quinn. However, defendant claims that Shea added to the confusion by testifying that the records she reviewed reflected that Quinn was treated on January 19, 2017.

¶ 15    When a defendant challenges on appeal the sufficiency of the evidence, we ask only " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 16    Here, Quinn's prior statements sufficiently proved defendant's guilt. Section 115-10.1 of the Code allows a party to use a witness's prior inconsistent statement as substantive evidence under certain circumstances. *People v. Simpson*, 2015 IL 116512, ¶ 27. Section 115-10.1 provides in relevant part as follows:

> "In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if
>
>> (a) the statement is inconsistent with his testimony at the hearing or trial, and
>>
>> (b) the witness is subject to cross-examination concerning the statement, and
>>
>> (c) the statement—
>>
>> ***
>>
>> (2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
>>
>>> (A) the statement is proved to have been written or signed by the witness[.]" 725 ILCS 5/115-10.1 (a), (b), (c)(2)(A) (West 2018).

¶ 17    A conviction may be based solely on statements properly admitted under section 115-10.1, even if the witnesses recant the statements and they lack corroboration. *People v. Davis*, 2018 IL

App (1st) 152413, ¶ 48; *People v. Douglas*, 2014 IL App (5th) 120155, ¶ 28. Moreover, the State need not prove precisely the date alleged in a charging instrument. The variance will not normally be fatal if the trial evidence establishes that the offense was committed on a date other than that alleged. *People v. Alexander*, 93 Ill. 2d 73, 77 (1982).

¶ 18    Quinn's two prior statements—the handwritten statement and the verified petition—were consistent in the relevant facts. Both stated that defendant was hiding in the children's closet and, when he found Quinn on the phone with another man, began punching and hitting her. When she asked him why, (1) he pushed her head into a wall, causing a hole in the wall, and (2) when she began fighting back, he punched her in the eye. After she pursued him outside, he punched her in the forehead and slammed her on the concrete. Quinn then noticed blood dripping from her head. Vega testified that Quinn provided the handwritten statement on February 1, 2017. Also on that date, Vega took pictures of Quinn's facial injuries. Shea testified that defendant received emergency room treatment for a laceration above her eye and possible head trauma.

¶ 19    Any discrepancy in the dates is not fatal. The indictment alleged that defendant committed the offenses "on or about" January 25 or January 26, 2017. Quinn's handwritten statement was dated February 1, 2017, but described events from January 26, 2017. The verified petition, dated February 3, 2017, alleged events occurring "[o]n or about February 1, 2017." "On or about" is defined as "at or around the time specified." Black's Law Dictionary 1262 (10th ed. 2014). Thus, "on or about" February 1 would be broad enough to include January 26. The only true outlier is Shea's testimony that Quinn was treated at the hospital on January 19, 2017. Shea had no independent recollection of the incident; her testimony was based on the medical records, which were not admitted into evidence. The one-week discrepancy in the dates can perhaps be explained as a scrivener's error. But even if Shea was describing a completely different incident, the

remaining evidence was sufficient to prove that defendant battered Quinn on approximately January 26, 2017.

¶ 20                                    III. CONCLUSION

¶ 21    We affirm the judgment of the circuit court of Kane County.

¶ 22    Affirmed.