2019 IL App (1st) 171405-U

SIXTH DIVISION
November 15, 2019

No. 1-17-1405

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 15632 |
| | ) | |
| SYED HASSAM, | ) | Honorable |
| | ) | Joel L. Greenblatt, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Cunningham and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The evidence at trial was sufficient to prove defendant guilty beyond a reasonable doubt. Where defendant cannot establish prejudice, we reject his claim that trial counsel was ineffective for failing to object to three witnesses' testimony as hearsay.

¶ 2     Following a bench trial, defendant Syed Hassam was found guilty of one count of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)), five counts of aggravated battery (720 ILCS 5/12-3.05(a)(5), (d)(2) (West 2016)), and two counts of unlawful restraint (720 ILCS 5/10-3(a) (West 2016)). At sentencing, the trial court merged several of the counts and imposed concurrent terms of two years of probation and 180 days in the Cook County Department

of Corrections on one count each of aggravated domestic battery, aggravated battery, and unlawful restraint. On appeal, Mr. Hassam contends that the State failed to prove him guilty of any offense. He further contends that his trial counsel was ineffective for failing to object to the State's "pervasive use of inadmissible hearsay testimony."

¶ 3    For the reasons that follow, we affirm.

¶ 4                                I. BACKGROUND

¶ 5    Mr. Hassam's convictions arose from events that involved his pregnant wife, Madiha Shaikh, between April and September 2016. Following his arrest, Mr. Hassam was charged with aggravated domestic battery based on strangulation, aggravated battery based on strangulation, aggravated battery based on causing bodily harm by striking a pregnant person about the body, aggravated battery based on causing bodily harm by grabbing a pregnant person about the neck, aggravated battery based on making physical contact of an insulting or provoking nature by striking a pregnant person about the body, aggravated battery based on making physical contact of an insulting or provoking nature by grabbing a pregnant person about the neck, unlawful restraint occurring on September 21, 2016, and unlawful restraint occurring on September 22, 2016.

¶ 6    At trial, Madiha's sister, Faiza Shaikh, testified that on September 23, 2016, Madiha called her, crying. Madiha related that defendant had divorced her and asked Faiza to come get her. Faiza picked up Madiha at a drugstore and brought her to her home. There, Madiha told Faiza that Mr. Hassam "beat [her] all the time" and that "he's beating her and he's swearing [at] her." Madiha also complained of pain in her stomach, so Faiza brought her to the emergency room at Presence Saint Francis Hospital in Evanston.

¶ 7    Dr. Wayne Larson testified that on September 24, 2016, he treated Madiha, who was 26 weeks pregnant, in the obstetrics/gynecology section of Presence Saint Francis Hospital, where

she had arrived in the emergency room the night before. Prior to meeting with Madiha in person, Dr. Larson reviewed records that were created by the hospital for her stay. The records indicated that Madiha's initial complaint as to why she came to the hospital was abdominal and pelvic pain and being kicked in the stomach by her husband. When Dr. Larson met with Madiha, she reiterated that she had lower pelvic pain and abdominal trauma because she had been kicked in the abdomen by her husband. Madiha said that "it" happened multiple times in the past, most recently two days prior, when she went to Northwest Community Hospital. Madiha related to Dr. Larson that she went home from that hospital in stable condition, but that she thereafter told her sister what happened and her sister helped her come to Presence Saint Francis Hospital to seek help.

¶ 8    Dr. Larson thereafter performed a physical examination, which he stated was remarkable for diffuse pain in the lower part of Madiha's abdomen as well as bruising in the lower left and lower right areas of her abdomen. Dr. Larson agreed that the bruises were consistent with Madiha's complaints of abdominal trauma. He also stated that the bruising would have been caused by something external, as opposed to internal.

¶ 9    On cross-examination, Dr. Larson testified that during Madiha's treatment, he learned that a few months earlier, she had undergone laparoscopic surgery to determine whether she had an ectopic pregnancy. When asked whether Madiha's bruises could have been consistent with that surgery, Dr. Larson answered that they could be, but in his opinion, bruises would not last that long. He agreed there was no shoe print or anything else about Madiha's bruises to indicate how they came about, and that nothing about the bruises revealed the time frame during which they were caused. In court, Dr. Larson reviewed records from Northwest Community Hospital and agreed they did not include any complaints by Madiha that she had been abused by her husband. Dr. Larson agreed that when he examined Madiha, he did not note any bruising around her neck,

face, or arms. However, he explained that he did not fully examine those areas of Madiha's body because she had not complained about any problems other than her abdomen.

¶ 10    Madiha testified that she and Mr. Hassam got married on April 3, 2016, and that they lived with his parents until the middle of September 2016, at which time they moved into their own apartment in Mount Prospect. At the time of trial, she was living with Mr. Hassam. During the time she and Mr. Hassam lived with his parents, he never struck, choked, or stepped on her. In May 2016, Madiha had laparoscopic surgery to determine whether she had an ectopic pregnancy. Late in the evening on September 21, 2016, Madiha called 911 because she was having abdominal pain. Madiha denied that Mr. Hassam slapped her face, punched her stomach, tied her hands behind her back with a scarf, tried to undress her, or attempted to have sexual intercourse with her before she called 911 that day. An ambulance came to her home and took her to Northwest Community Hospital, where she was examined and released.

¶ 11    Madiha also denied that anything unusual happened between her and Mr. Hassam the next day, September 22, 2016. She denied that Mr. Hassam slapped her, told her she could leave, or locked her out of the apartment. Madiha admitted that she went to a neighbor's house that day, but stated she did so because she and Mr. Hassam were having an argument and she was depressed and stressed about her pregnancy. She explained, "So I told him I'm going to leave and then go to my sister's house. That's why I left the house. He didn't tell me to leave the house." Madiha further explained that she went to the neighbor's house in order to use the phone there, and that Mr. Hassam came and got her from the neighbor's at some point that day.

¶ 12    Madiha testified that on September 23, 2016, she and Mr. Hassam had an argument over the phone. During the argument, Madiha thought she heard Mr. Hassam say the word "divorce" three times in their native language, Urdu, although she stated in court that she misheard the word

Mr. Hassam actually used. Madiha explained that in her culture, saying "divorce" three times makes a divorce "take place," so she believed at that time that her marriage had ended. As a result, she called her sister, who picked Madiha up and took her to her house. Madiha denied that Mr. Hassam slapped or hit her that day.

¶ 13    Later that day, Madiha had "pain as usual." She told her sister about the pain, but stated that she did not remember telling her sister why she was in pain. Madiha's sister took her to Presence Saint Francis Hospital. Madiha testified that she did not remember what she told hospital personnel about why she was there, and did not know what statements she made at the hospital. She explained that she was depressed at the time, but due to being pregnant, she could not take antidepressants. Madiha did remember telling hospital personnel that she was experiencing lower abdominal pain and that she had gone to Northwest Community Hospital with similar complaints two days prior.

¶ 14    Madiha testified that two police officers came and spoke with her at Presence Saint Francis Hospital. She did not remember telling one of the officers that after they were married, Mr. Hassam would verbally and physically abuse her almost daily, that he told her not to tell anyone, or that she did not report the abuse out of fear. Madiha also did not remember telling that officer that Mr. Hassam refused to take her to the hospital, that she did not tell paramedics about the abuse because she was afraid of Mr. Hassam, that Mr. Hassam slapped her and punched her on September 21 and 22, that he tied her hands behind her back with a shawl, that he locked her in a bedroom, or that he said he would kill her if she told anyone.

¶ 15    Madiha testified that she did not remember telling the other officer, a detective, that Mr. Hassam began physically abusing her about a week into their marriage, that the abuse escalated from a face slap to stomach punches while she was pregnant, that defendant stepped on her

stomach while she was pregnant, or that he placed his hands around her neck, causing her to have difficulty breathing. She did not remember telling the detective she was afraid to say anything about the abuse because Mr. Hassam said he would kill her if she did so, or that Mr. Hassam said she would kill her and the baby if she ever left him. Madiha also did not remember telling the detective that on September 21, 2016, she experienced pain in her stomach from carrying some items upstairs; that Mr. Hassam became enraged when she told him about it, slapped her face, punched her stomach, tied her hands behind her back with a shawl, tried to remove her clothes, left her in a bedroom, and refused to take her to the hospital; or that she was unable to tell personnel at Northwest Community Hospital about the abuse because Mr. Hassam was constantly at her side. Madiha further stated she did not remember telling the detective that on September 22, 2016, Mr. Hassam slapped her face, punched her stomach, and locked her out of the apartment. Madiha reiterated that she could not remember what she said to the police because she was depressed at the time.

¶ 16    Madiha acknowledged that while in the hospital, she spoke with the detective a second time, with an assistant state's attorney present, and that the conversation was videotaped. However, Madiha stated she did not remember making several statements during that conversation, including that Mr. Hassam slapped her during the first and second weeks of their marriage, slapped and choked her in June and July 2016, stood on her stomach when she slept on the floor in June or July 2016, choked her two or three more times, stepped on her stomach again, and threatened to kill her and the baby if she told anyone what happened. Madiha did not remember relating that on September 21, 2016, Mr. Hassam accused her of faking pain when she carried items up the stairs, slapped her face, punched her stomach, tied her hands behind her back with a shawl, tried to

sexually assault her, and refused to take her to the hospital. She also did not remember relating that on September 22, 2016, Mr. Hassam slapped her and locked her out of the apartment.

¶ 17     When shown photos of her abdomen that were taken at Presence Saint Francis Hospital on September 23, 2016, Madiha pointed out the incision from her laparoscopic surgery in May. She stated that her "stomach" was red in the images because she wore a binder to lift her abdomen, and that the marks depicted in the photos were a result of the surgery.

¶ 18     On cross-examination, Madiha stated that Mr. Hassam never attempted to force himself on her sexually; locked her up; slapped her; kicked, stomped on, punched, or stood on her stomach; tied her up; choked her; or threatened to kill her or the baby. She testified that she was not afraid of Mr. Hassam, and that no one threatened her to say so. Madiha explained that the binder she wore was tight and sometimes left marks "in front and in back." She stated that she watched the video of her statement, but maintained that she did not remember making the statements contained in it. She explained that after giving birth, she talked to a doctor about being depressed and was prescribed antidepressants. They improved her mood and memory.

¶ 19     Mount Prospect police officer William Frances testified that late in the evening of September 23, 2016, he met with Madiha and her sister in an office off the waiting room of the emergency room at Presence Saint Francis Hospital. When the prosecutor asked whether Madiha reported that after she got married, her husband would abuse her verbally and physically almost daily, defense counsel objected on the basis that it was a leading question. The court initially sustained the objection, but then after the prosecutor stated that the question was "to prove up impeachment," the court allowed it. Officer Frances then agreed that Madiha had made the statement. He also agreed that Madiha told him that: Mr. Hassam told her not to tell anyone and she complied out of fear; the verbal and physical abuse continued when they moved to Mount

Prospect; on September 21, 2016, Mr. Hassam slapped her face, punched her stomach, and refused to take her to the hospital, and that she called 911 but did not tell the responding paramedics about the abuse due to her fear of Mr. Hassam; on September 22, 2016, Mr. Hassam slapped her face, tied her hands behind her back with a shawl, struck her face and stomach with an open hand and closed fist, said he would kill her if she told anyone, refused to take her to the hospital after she said her stomach hurt, and locked her in a bedroom; and that on September 23, 2019, Mr. Hassam slapped her face and punched her stomach.

¶ 20    On cross-examination, Officer Frances agreed that Madiha also told him Mr. Hassam had dug his fingernails into her forearm. Officer Frances had an opportunity to look at Madiha's forearm and did not see any injury. He also did not see any bruising on her face. Before speaking with Madiha, Officer Frances did not place her under oath or make her swear that her statement was the truth.

¶ 21    Mount Prospect police detective Michael Landeweer testified that around 12:30 a.m. on September 24, 2016, he had a conversation with Madiha at Presence Saint Francis Hospital. During the conversation, Madiha told him that Mr. Hassam began physically abusing her about a week after they got married, that the abuse began as an open-handed slap to her face and escalated to him punching her in the stomach while she was pregnant, and that she was afraid to say anything about the abuse because Mr. Hassam threatened to kill her if she told anyone in the family. Madiha further related that Mr. Hassam stepped on her stomach while she was pregnant; placed his hand around her neck, causing her to have difficulty breathing; and threatened to kill her and the baby if she ever left him. Madiha told Detective Landeweer that on September 21, 2016, she experienced pain in her stomach after carrying some items up the stairs, and that when she told Mr. Hassam, he became enraged, slapped her face, punched her stomach, pulled her into a bedroom, tied her

- 8 -

hands behind her back with a shawl, tried to remove her clothes, and refused to take her to the hospital. That same day, she went to the hospital, but was unable to tell the staff about the abuse because Mr. Hassam was constantly at her side. Madiha told Detective Landeweer that on September 22, 2016, Mr. Hassam slapped her face, punched her stomach, and locked her out of their apartment.

¶ 22 Detective Landeweer testified that the next day, he and an assistant state's attorney spoke with Madiha at the hospital. Madiha agreed to have a statement videotaped. Detective Landeweer identified a DVD copy of that videotaped interview.

¶ 23 On cross-examination, Detective Landeweer agreed that Madiha was not placed under oath either time he spoke with her.

¶ 24 The State requested that the trial court view Madiha's video statement. Defense counsel objected on the basis that the content of the video was cumulative "because basically everything that's on the video has been published to the court." The trial court overruled the objection and stated it would watch the video. The prosecutor indicated that the State would seek to publish the video to the court. Defense counsel made the following objection:

> "Judge, I'll renew my objection and it's the same objection that I had as to the State's leading questions and eliciting of the story. It was improper. The theory upon which that was admitted was impeachment and Ms. Shaikh did not deny making the statements. She denied -- she said that she did not remember them and she denied the veracity of them. That is not a proper means of impeachment, to use a hearsay statement to impeach a statement that is not denied by a complaining witness. It is cumulative. It is meant for impeaching purposes. It is not direct evidence and should not be considered as direct evidence."

Defense counsel clarified that by "direct," he meant substantive evidence.

¶ 25    The State responded that Madiha's protestations that she did not remember making the statement were "equal to a denial." Further, the State argued that the videotaped statement was not offered for impeachment purposes, but rather, as substantive evidence, and that it was not cumulative. The trial court determined that the videotaped statement was admissible as substantive evidence, as a prior inconsistent statement of a witness. Thereafter, the video was played in open court.

¶ 26    On the video, Madiha related that Mr. Hassam slapped her face for the first time approximately a week after they got married in April 2016. She did not tell anyone, and it happened again about a week later. Shortly thereafter, she began experiencing abdominal pain, so she went to the doctor, who informed her she was pregnant and that it may be an ectopic pregnancy. In May 2016, Madiha had surgery to determine whether she had an ectopic pregnancy. In June or July, Mr. Hassam sexually assaulted her on two occasions. He tied her hands with a shawl, had intercourse with her against her will, and said he had a right to do so because she was his wife. Also in June or July, Mr. Hassam slapped her, put both hands on her neck, and choked her so that she could not breathe. Later that night, Madiha experienced pain near the area of the incision in her abdomen, so she got out of bed and lay on the floor. When she made noises because of the pain, Mr. Hassam said she was disturbing him and stepped or stood on her belly with one foot, near her incision. Madiha related that during June or July, Mr. Hassam choked her two or three more times and stepped on her stomach one or two more times. In August, after Mr. Hassam learned Madiha had told his mother about the abuse, he threatened to kill her and the baby if she ever told anyone else he was abusing her. She was never able to tell her family about the abuse because Mr. Hassam and her in-laws would overhear and could harm her.

¶ 27    On September 21, 2016, Mr. Hassam asked her to carry some items up the stairs. She complied even though she told him she was not supposed to lift things due to her pregnancy. After carrying the items, Madiha was in so much pain that she lay down on the sofa. Mr. Hassam told her she was acting, slapped her face, punched her stomach, and told her to make dinner. Later that day, Mr. Hassam took Madiha into the bedroom, tied her hands behind her back with a shawl, and tried to remove her clothes and sexually assault her. Madiha resisted, and after 5 to 10 minutes, Mr. Hassam left the room and closed the door. Madiha freed her hands, called Mr. Hassam, and told him she had to go to the hospital because she was in pain. Mr. Hassam refused to take her, so she called 911. An ambulance arrived and took her to the hospital that night. Madiha was treated in the emergency room with Mr. Hassam present.

¶ 28    The next day, September 22, 2016, Madiha arrived home from the hospital. After she made breakfast, Mr. Hassam slapped her and went to work. When he came home from work, he slapped her again and locked her out of their apartment. Madiha went to a neighbor's apartment to use the phone. Before Madiha could call her family, however, Mr. Hassam came to the neighbor's apartment and took her home. When he learned she had told the neighbors he locked her out, he slapped her. Later that night, he hit her again.

¶ 29    On September 23, 2016, Mr. Hassam went to work around noon. Late that afternoon, he called on the phone. During their conversation, Mr. Hassam said he was divorcing her and said the word for divorce four times. Madiha explained to the assistant state's attorney that in her culture and religion, "if you say divorce three times it happens." Madiha called her family in Canada, who directed her to gather her papers and go to a nearby store. From there, her sister Faiza picked her up. Ultimately, Faiza brought Madiha to Presence Saint Francis Hospital.

- 11 -

¶ 30    Mr. Hassam made a motion for a directed finding, which the trial court denied. Mr. Hassam then rested.

¶ 31    Following closing arguments, the trial court found Mr. Hassam guilty on all counts. In the course of doing so, the court noted it had found Madiha's videotaped statement admissible as a prior inconsistent statement under section 115-10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 2016)), and had considered the videotaped statement as substantive evidence.

¶ 32    Mr. Hassam filed a motion for new trial and a motion to reconsider the guilty findings. The trial court denied both motions.

¶ 33    At sentencing, the trial court merged several of the counts and imposed concurrent terms of two years of probation and 180 days in the Cook County Department of Corrections on one count each of aggravated domestic battery, aggravated battery, and unlawful restraint.

¶ 34                                II. JURISDICTION

¶ 1     Mr. Hassam was sentenced on May 12, 2017, and timely filed his notice of appeal on June 5, 2017. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Dec. 11, 2014), governing appeals from final judgments of conviction in criminal cases.

¶ 35                                III. ANALYSIS

¶ 36    On appeal, Mr. Hassam challenges the sufficiency of the evidence, contending that the State failed to prove him guilty of any offense. He argues that he was convicted based on bruises on Madiha's stomach and "inconsistent and fully retracted out-of-court statements of [Madiha] *** who fully explained her false statement as the byproduct of a faulty mental state and anger directed at [defendant] as a result of a misunderstanding that their marriage was over." He asserts

that Madiha's out-of-court statement lacked specificity regarding dates, times, and other details, and was "rife with inconsistencies." Mr. Hassam maintains that the circumstances of Madiha's report of abuse suggest a motivation other than truthfulness, as she had never made a prior report, despite having undergone repeated medical treatments throughout her pregnancy. He highlights that she recanted her allegations, and argues that the physical evidence was entirely inconsistent with the recanted allegations, as no one observed any bruises on her neck, face, or arms. Mr. Hassam asserts that where the State's evidence does not prove beyond a reasonable doubt how the bruises on Madiha's stomach actually resulted, it failed to meet its burden of proving him guilty.

¶ 37    When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). The credibility of the witnesses, the weight to be given their testimony, and the resolution of any conflicts in the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Brooks*, 187 Ill. 2d 91, 131 (1999). The testimony of a single witness, if positive and credible, is sufficient to convict. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Reversal is justified only where the evidence is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to the defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 38    Madiha's videotaped statement was admitted as substantive evidence pursuant to section 115-10.1 of the Code, which provides, in relevant part, as follows:

"§ 115-10.1. Admissibility of Prior Inconsistent Statements. In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement –

***

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

***

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." 725 ILCS 5/115-10.1 (West 2016).

Defendant does not dispute that Madiha's videotaped statement was properly admitted, but rather, contends only that the statement was insufficient to convict him. We disagree.

¶ 39    A recanted prior inconsistent statement that is admitted under section 115-10.1 can support a conviction, even in the absence of any corroborative evidence. *People v. Douglas*, 2014 IL App (5th) 120155, ¶ 28; *People v. Armstrong*, 2013 IL App (3d) 110388, ¶ 23. So long as a prior inconsistent statement meets the test of section 115-10.1, a finding of sufficient reliability is automatically made and no additional analysis is needed. *Douglas*, 2014 IL App (5th) 120155, ¶ 29. It is then the duty of the trier of fact to assign weight to the statement after hearing the declarant's inconsistent testimony. *Id.* Once a trier of fact finds a defendant guilty based upon a prior inconsistent statement, "not only is the reviewing court under no obligation to determine whether the declarant's testimony was 'substantially corroborated' or 'clear and convincing,' but it may not even undertake that analysis." *Id.* ¶ 30 (quoting *People v. Morrow*, 303 Ill. App. 3d 671, 677 (1999)).

¶ 40 Here, we find Madiha's videotaped statement sufficient to prove Mr. Hassam guilty of the crimes of which he was convicted. We note that Madiha was living with Mr. Hassam at the time of trial and that they had a child together. Thus, the record reveals a reason why Madiha might have changed her story, as do many victims of domestic abuse. See *id.* ¶ 31. As for defendant's argument that Madiha's out-of-court statement lacked specificity regarding dates, times, and other details, and was "rife with inconsistencies," it is for the finder of fact to judge how flaws in a witness's testimony affect the credibility of the testimony as a whole. *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004). The trial court, which saw and heard Madiha testify, was in the best position to weigh her credibility, and found her prior statement more reliable than her in-court testimony. We will not substitute our judgment for that of the trial court on this question of credibility. *Brooks*, 187 Ill. 2d at 131. Moreover, we note that while corroboration is not necessary, some corroboration existed for Madiha's report of Mr. Hassam punching and stepping on her abdomen. It is undisputed that Madiha presented at the emergency room with bruises on her abdomen, and her treating physician opined at trial that the bruising not only was caused by something external, but was unlikely to have lingered since the laparoscopic surgery she underwent months earlier.

¶ 41 After viewing the evidence in the light most favorable to the prosecution, which we must, we find that a rational trier of fact could have found Mr. Hassam guilty beyond a reasonable doubt. The evidence is not "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to Mr. Hassam's guilt. *Slim*, 127 Ill. 2d at 307. Mr. Hassam's challenge to the sufficiency of the evidence fails.

¶ 42 Mr. Hassam's second contention on appeal is that his trial counsel was ineffective for failing to object to the State's "pervasive use of inadmissible hearsay testimony." Specifically, Mr.

Hassam faults his counsel for not objecting on hearsay grounds when (1) Madiha's sister, Faiza, testified that Madiha told her Mr. Hassam "beat [her] all the time" and that "he's beating her and he's swearing [at] her"; (2) the prosecutor elicited testimony from Officer Frances that Madiha described numerous instances of physical abuse and threats made by Mr. Hassam; and (3) Detective Landeweer testified to various statements Madiha made to him regarding Mr. Hassam abusing and threatening her. Mr. Hassam argues that because defense counsel failed to lodge hearsay objections to this testimony, the State was never required to articulate a basis for the out-of-court statements' admissibility. He further asserts that the hearsay was inadmissible because it was highly prejudicial and had no probative value, that the testimony was duplicative of Madiha's videotaped statement, and that defense counsel lacked any valid strategic or tactical reason for failing to object. Mr. Hassam concludes that had counsel not performed deficiently, the whole of the evidence at trial would have been cast in a different light and that "there is more than a reasonable probability of a different outcome."

¶ 43    The State responds that defense counsel did not act unreasonably in failing to object to the testimony given by Faiza, Officer Frances, and Detective Landeweer on hearsay grounds because Madiha's statements to them were admissible under the hearsay exception for excited utterances; that Madiha's prior inconsistent statements to these three witnesses were admissible to attack her credibility; and that even if the challenged testimony should have been excluded, it must be presumed that the trial court disregarded it in finding Mr. Hassam guilty.

¶ 44    To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In addition, a defendant must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id*. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*. If a case may be disposed of on one *Strickland* prong, this court need not review the other. *People v. Irvine*, 379 Ill. App. 3d 116, 129-30 (2008).

¶ 45    Here, we need not determine whether Madiha's statements to Faiza, Officer Frances, and Detective Landeweer constituted excited utterances, whether the testimony of these three witnesses was admitted solely for purposes of impeachment, or whether defense counsel's failure to object to the testimony of the three witnesses was unreasonable. This is because Mr. Hassam cannot establish prejudice. See *Strickland*, 466 U.S. at 697; *People v. White*, 2011 IL 109689, ¶ 133. Even without the challenged testimony, the evidence against defendant was overwhelming.

¶ 46    As discussed above, Madiha's videotaped statement was admissible as substantive evidence pursuant to section 115-10.1 of the Code. 725 ILCS 5/115-10.1 (West 2016). In that statement, Madiha related that Mr. Hassam struck her twice in April of 2016; tied her hands and had intercourse with her against her will twice in June or July of 2016; slapped and choked her three or four times in June or July of 2016; stepped or stood on her pregnant belly two or three times in June or July of 2016; and threatened to kill her and the baby if she told anyone he was abusing her in August 2016. Madiha related that on September 21, 2016, Mr. Hassam slapped her face, punched her stomach, tied her hands behind her back, tried to remove her clothes and sexually assault her, and refused to take her to the hospital when she told him she was in pain. Madiha further related that on September 22, 2016, Mr. Hassam slapped her multiple times, locked her out of their apartment, and hit her. Photographs of bruises on Madiha's abdomen corroborated portions of her videotaped statement. Having carefully reviewed all the evidence presented at trial, we find that the evidence of Mr. Hassam's guilt—even absent Madiha's statements to Faiza, Officer

Frances, and Detective Landeweer—was overwhelming. See *People v. Weston*, 2011 IL App (1st) 092432, ¶¶ 38, 42 (evidence may be deemed overwhelming even in the absence of physical evidence or a confession).

¶ 47 A claim of ineffective assistance of counsel based on trial counsel's failure to object to hearsay testimony cannot establish the prejudice prong of the *Strickland* test if the admissible evidence against the defendant is overwhelming or the inadmissible hearsay evidence is cumulative of admissible evidence. See, *e.g.*, *People v. Theis*, 2011 IL App (2d) 091080, ¶¶ 41, 44; *People v. Alexander*, 354 Ill. App. 3d 832, 846-47 (2004). Here, where overwhelming admissible evidence established Mr. Hassam's guilt of the charged crimes, and where Madiha's statements to Faiza, Officer Frances, and Detective Landeweer—whether admissible or not—were cumulative to Madiha's videotaped statement, we cannot find Mr. Hassam was prejudiced by his trial counsel's failure to object to those witnesses' testimony on hearsay grounds. Mr. Hassam's claim of ineffective assistance of counsel fails.

¶ 48                                    IV. CONCLUSION

¶ 49 For the reasons explained above, we affirm the judgment of the circuit court.

¶ 50 Affirmed.